U.S. Secretary of the Interior Mr. Wallery for the appellant Mr. Damasio for the appellee Good morning counsel Good morning, if it pleases the court I'm Michael Wallery, I'm here on behalf of the Mackinac Tribe And I wish to reserve two minutes for rebuttal   The IRA The IRA The IRA The IRA The IRA was enacted to allow Indian Tribe to reorganize so that they could adopt modern institutions to have a rational relationship with the United States government and also to provide for orderly government within their tribes The Mackinac have requested to be reorganized and they did not ask to be acknowledged by the Secretary When you say request to be reorganized are they organized in any form now? Yes they are What form? It's very much like the Merriam Report They're not organized under the IRA, right? No So what form are they organized? They currently are composed of four different autonomous groups that have emerged over the last hundred years essentially but they have combined to create a consolidated tribal council for the purposes of reorganizing because as you can imagine having four different groups out there, it's very confusing which is what the Merriam Report was all about like for example on Cheyenne and Arapaho But they have a council that governs internal affairs and things of that nature Well yeah It's a litigation council and they have a litigation chief which is Darren Breguet who kind of keeps an eye on me and lets me know when I'm messing up Okay But they do like to reorganize to actually have one tribe Now the it's really important that the district court in this case never reached the issue as to whether or not the Mackinac were a recognized tribe and she never reached the issue of whether or not they were illegally terminated and what's very important is that she never resolved the issue as to whether or not they were a tribe for the purposes of the IRA That's a very important issue and consequently could not make a ruling on the plausibility Why not go through the Part 83 process? I don't ask you to reveal your litigation strategy Well, your litigation strategy is apparent You've chosen not to go through the Part 83 process Why not? Well, there's many reasons for it There's been actually congressional hearings on it explaining that the Part 83 process is extremely long For example, in the case that is before the circuit right now in the Grand Rome case took 20 years for the Cowlitz tribe to be recognized but there's a bigger issue and that is the question is the wrong question Sorry Forgive me Tell me the right question, I need help Well, I'll let you know if it's the right question But the right question is this The right question is why are they being forced to do that when they have a treaty which recognizes them as a tribe and that Are you aware of any instances since 1978 where a tribe has gained recognition and has not gone through the of the 500 tribes on the list have not gone through They were recognized since 1978 Yeah, of course my favorite one being the Alaska tribes which is over 260 tribes which came out of the NOATAC decision I represented the non-IRA ones in that one and none of them went through the Part 83 process although it existed at the time In the Tilley-Harwick cases in California 17 tribes were recognized by the courts and did not go through the Part 83 because they had not been recognized by the secretary but they were recognized by the courts They were determined as the Mackinac They were determined to be administratively illegally terminated which is the Tilley-Harwick cases and 17 Rancherias It's actually cited in the briefing on trying to anticipate your question In addition to that one tribe in Michigan and that is the Sault Ste. Marie tribe was acknowledged in 1980 The case cited in the briefing is City of Sault Ste. Marie versus Andres and they explain in there that the Sault Ste. Marie tribe which is the largest tribe east of the Mississippi was not recognized through the Part 83 process but was recognized in a process where the secretary drafted a memorandum saying oh we made a mistake and the tribe was a treaty tribe and recognized it It was a treaty tribe under the same treaty that we're talking about with regards to the Mackinac The treaty of 1855 set up seven vicinities and residency and in article 5 of that treaty guaranteed to the tribes that the United States would deal with them not as the because they dissolved the Chippewa Nation but on the basis of their residency in either the vicinities of their lands that were set aside which in the Mackinac was the St. Ignace and the Manistique reserves or their place of normal payment of their annuities which was St. Ignace Could you help me I had trouble understanding your argument about distinction between recognition and acknowledgement Fascinating issue Can you dumb that down for me and give me a short Only Congress can recognize an Indian tribe and actually they state that in their brief at page 5 and that is a normal rule Only Congress can recognize an Indian tribe and the way they do that, and it's explained in the Noatak vs. Hoffman decision you basically look at what are called the Mentoya factors and the Mentoya factor looks at the way Congress has dealt with that entity in the past If they have a treaty they're recognized as a tribe If they don't have a treaty about half of the tribe, well over half about two thirds of the tribes in the U.S. are not treaty tribes If they do not have a treaty, you take a look at whether or not there are statutes in which they were dealt with as tribes for example in the Noatak case in Alaska Who's doing the looking here Ah, very interesting question because as it says in the Tribal List Act itself three entities can do it Congress can simply pass a law which it does on occasion There is a process where and there always has been a process where the Secretary can do it, it's been formalized now into Part 83 but it's acknowledged, it's not recognition Acknowledgement is acknowledging what Congress has done So for example Congress can recognize but acknowledgement is saying Oh, Congress recognized and the other group that gets to do this are the courts and that goes way back under the Noatak decision or under Mantoya all the way into the Noatak decision as an established way and it is specifically referenced in the Tribal List Act Section 4 as a Congressional finding that that's the way it happens And why does that matter here? Section 4 also says this If the tribe is recognized nobody can take it away except Congress Nobody can take away the right to recognize a tribe except Congress And what you have here is a usurpation by the Secretary, and a relatively new usurpation A usurpation by the Secretary saying they have the exclusive right to recognize, and that's not the law and has never been the law and is actually in opposition to what the Department has been arguing recently in Stand Up vs. California and in the City of St. Marie, excuse me. Mr. Weller, are you challenging the new regulation from the end of last year that defines recognition basically as being on the... No, because I think as the Secretary pointed out in her brief they're not arguing that that regulation applies. Why doesn't it apply? And I can ask the... Because we started this whole thing a long time ago long before, and essentially the regulation was changed in response to this... See, because under the old regulation when we filed the lawsuit and that's part 81.1 what it says is that you are eligible for reorganization if you are on the list or eligible to be on the list And of course, to be eligible to be on the list, you have to be a recognized tribe and how do you be a recognized tribe? You have a treaty. If you have a treaty, you're a recognized tribe. Otherwise, you have to be somehow acknowledged either by the courts or by the Department. Well, the government takes the position that eligible to be on the list means they only publish this list every so often and so somebody who's already been determined by the Executive Branch to be recognized but not listed is eligible to be on the list. That's not been the practice of the Department as I pointed out and has been part of the litigation history of this for example, NOATAC where the courts recognize over 200 tribes in Alaska, Tilly Hardwick 17 tribes in California and of course in Michigan, the Sault Ste. Marie It's not done that way. So walk me through just this statutory and regulatory path. Under which portion of tribe or Indian tribes do you believe the Mackinac are entitled to judicial recognition? You're asking the court to order that they are recognized. No, I'm not asking you to nobody's asked the courts to order the recognition of the Mackinac because and I don't mean to be insulting about this but the Mackinac kind of think they've been recognized since 1855. You're asking for a declaratory judgment that they are recognized. We did but that's not part of the appeal. That was count one. I think we still need to figure out what is the difference between being recognized and being acknowledged and what flows from that. The difference is that acknowledgment is the acknowledgment or the declaration that a tribe is recognized. And so in your view that is something that the secretary can do. It's the end of the part 83 process or is that recognition? Yes, if we had gone through the part 83 process. So your view is if you had gone through the part 83 process you would be acknowledged but not necessarily in other words to be acknowledged means that you are recognized. Yeah, because for example tribes and this is what Justice Breyer was trying to explain and having a similar problem with my explanation because Indian law is somewhat obtuse. I think that's polite but what Justice Breyer was pointing out in his kind of become the big issue in this whole area is that the Bureau of Indian Affairs makes mistakes no news by the way to the Indians but he basically said the Bureau of Indian Affairs makes mistakes all the time and that it's not a question that these entities were not recognized because they were recognized and all the acknowledgement process does is say look back and say over all this period of time what did Congress recognize this Indian tribe as an Indian tribe and as I say there are two entities that can do that that at least Congress says in the Indian List Act two ways to do that. You can go through the part 83 and you can go through the courts. Now what's interesting about that I want you to stop there because what I'm trying to figure out is when we talk about going through the court what does that really mean? The way I read the list act every branch of government can do this right? Congress clearly can enact a statute. The executive can do it through the part 83 process right? Now how do courts get involved in this? There has to be something in a collateral where as a matter of collateral narrowly courts would get involved because the executive process had been started perhaps that did not work out as people wanted it to and so that could be challenged. So my question is if you're not doing that though how do you get this to court? Well actually that's not the way it normally happens in courts. For example if they have said we're going to go through the part 83 process and then they start that part 83 process and then it doesn't go well well I hate to break the news to you but you can't sue unless you go through that whole process and that's a 20 year process. That's my question. But the way it's normally come up is as it was in like for example U.S. versus Montoya which is the seminal case in this area that was brought up in a criminal case where I believe an Indian was being charged with a is either a liquor violation of Indian liquor laws I may be getting my cases confused or it was another criminal matter and his defense was that he was an Indian and the laws that was being enacted and charging him was not in fact applicable to him. But that seems to me different from recognition. What I'm trying to figure out is how do courts get involved when the argument is we are a recognized tribe or should have been and we don't want to go through the process that the executive has established Well  from this side of the bench your honor. The way it is from this the Mackinaw the Mackinaw in 1910 they were enrolled they had native allotments, they were receiving annuities. Today the Mackinaw receive all kinds of services because of their status as Indians to some degree depending upon what's going on with their 638 contract which is handled through the Sault Ste. Marie the so the bigger question these issues come before the courts for example in Noatak it came before the courts based upon a failure of the state of Alaska to pay revenue sharing that under state law went to Indian tribes and the state administration said there are no Indian tribes in Alaska and so the question was let's take a look at that statute and see if there are Indian tribes in Alaska and the 9th Circuit said yes even though they were excluded from the list and specifically excluded from the list that was promulgated and had never gone through the Part 83 process often times and this is the interesting thing as we point out there is no definition of what an Indian tribe is and this was again part of what Breyer was talking about. If you take a look at footnote 24 and 25 I list the fact that the Part 83 definition of an Indian tribe is only used in about 3 statutes the term Indian tribe and there's many many statutes I think there's close to 60 statutes in which the term Indian tribe is made and those are discussed in footnote 25 and that's why Justice Breyer was saying that there is this unyielding detailed and unyielding definition of an Indian tribe based upon the purposes for which you are looking at that Indian tribe. If you are trying to reorganize you don't go to Part 83 you go to the IRA you say what does the IRA statute say and what the IRA statute says is that you have to be a recognized tribe. It doesn't say an acknowledged tribe it says a recognized tribe and it also says you have to have been under federal jurisdiction in 1934 two things now the government doesn't really dispute any of this in fact for the purposes of this they never filed an answer and all of the alleged facts in the complaint are deemed to be admitted. They basically demurred to it. So you have to take a look at that statute like for example base closure military base closure has a definition of Indian tribes but it only applies to certain Indian tribes and that definition of Indian tribe is very narrowly defined under Johnson O'Malley education act funding. Certain tribes can receive it other tribes can't and so when you're looking at the implementation of a statute you have to take a look at this detailed and unyielding definition that is applicable to the purposes for which you are looking we are being told by the secretary that for purposes of this law the Indian Reorganization Act that they have chosen as a regulatory matter to define tribes in this uniform way as the result of this process actually you're not being told that they don't actually argue that in any of the briefings. I understood the regulation to so the new regulation and we will ask the secretary about why or whether that applies but even if we're back at eligible included or eligible to be included we're still talking about part of included or eligible to be included and I hear you about eligible to be included you see that as quite broad and maybe covering the waterfront that includes your clients unfortunately as the Carcieri decision points out on such a fundamental issue as what's an Indian tribe for the purposes of the IRA they get it wrong all the time and the Supreme Court says that the Narragansett are not an Indian tribe for the IRA now they're a fully recognized Indian tribe for under the List Act they were fully recognized for lots of other purposes but for the IRA they were not an Indian tribe and that's what Breyer is talking about you look at the IRA you don't look at what these guys say well this is what we think is Indian tribe because the court has rejected that well our court also though has recognized expertise of the secretary and said and the district court here said reading our opinions and James and and Miwok and elsewhere at least give them a crack and yeah maybe they get it wrong maybe the court is there as a backstop but as a matter of exhaustion or if you're right on the law maybe maybe statutory standing you have to have gone there first not in those cases because those cases are clearly distinguished from what we're talking about here those cases dealt in particularly the ones in the DC circuit all dealt with two distinguishing factors one those tribes were suing the secretary to be on the list they weren't suing under the IRA they were suing under the Indian Tribal List Act and of course I have to agree with this court in those cases the other distinguishing aspect about that is that in those cases those were all non-treaty tribes so you didn't have a situation where you were having a treaty tribe come and say you know what we were recognized back in 18 whatever by a treaty and we've always been a tribe those were cases where you had but in those cases it's the currency of the determination in Miwok it talks about you can have a tribe that's recognized and it fades away so it sure seems to me like from our cases what we're saying is this part 83 process is a critical door that you need to go through a recognition that there are problems out here and I take it maybe I shouldn't use the word recognition I was going to say an acknowledgement I shouldn't use that word either but a realization that there's a problem here that we have historic decisions made by the United States question whether those are vibrant today, vital today and in our cases we've said I thought we've said it's the part 83 process that cleans it up this circuit has never dealt with this issue this circuit has never dealt with the issue of what's a tribe for the purposes of the IRA and I'll tell you what, the one question you should ask, it's not me these guys, ask them where, two things, one where does it say in the IRA which was passed 40 years prior to the part 83 process that they were going to use this part 83 process as part of the acknowledgement or the process for being eligible to be an IRA tribe and the second question is where has there ever been where has there ever been a court that has upheld an administrative termination of an Indian tribe that had a treaty saying you're an Indian tribe and promising that you're going to go forward and deal with that group and the answer to both of those questions are one the Congress so is it your argument if there was a treaty in 1850 that fixes for all time that that group is a tribe it can't fade away? Oh no no no no no not at all, not at all then how is the secretary supposed to make a determination the secretary doesn't get to make that the way this works is I ask the question and you let me finish sorry and now I've lost my train of thought which I'm not appreciative for I apologize the point that you were asking though is how does the secretary determine what's a tribe and what's not a tribe I think my question was forgive me, I think my question was if we have an instance where in the 19th century the secretary of the United States government recognizes a tribe your point is not that that recognition is good for all time the secretary needs to have some mechanism to update that if there's questions about whether that tribe exists any longer isn't that what part 83 process does? No the interesting thing about part 83 is once again that's twice how is the secretary to make that determination how is the secretary to update to say we have a treaty in 1855 does that group still exist is it still a tribe how is he supposed to do that or is she supposed to do that the answer is she doesn't get to do that and that's the whole Mashpee decision in other words and that's what happened here back in 1889 the secretary of war at the time said there are no Mackinac's anymore while in 1926 they documented that there were over a thousand Mackinac's and it was a political decision under the Mashpee line of cases the secretary doesn't get to terminate Indian tribes the only entity that can terminate an Indian tribe is Congress and that's what you really hit the nail on the head and that is does the secretary and we argue that in this particular case that the secretary is usurping congressional power because the that Congress regulates the relationship with Indian tribes not the secretary so I take it that your position is that the Mackinac are a recognized tribe and that we should accept that based on your representation we don't need to decide that all we need to say is here's somebody coming before the court who claims to be a tribe and wants to organize and the secretary has not acted on their request for a secretarial election and we should order that what do you think we do need to determine since you answered no to my question that we would need to determine that the Mackinac are a recognized tribe you say no we don't need to so fine I'm wondering what you think we do need to find in order to reach your election claim your organization claim I think all that's needed is a determination by this court that part 83 and the acknowledgement process is not a prerequisite of organization under the IRA or the definition of a tribe for the purposes of the IRA and remand to the court to determine that issue which was I think the question for us is there seem to be some cases in which it's not a prerequisite and whether the secretary fully acknowledges that under its current regulation or not there do seem to be some but I'm not convinced that you've explained to us why your client is among those for whom part 83 is not the requisite process and so that's what when I said what's your path under the statute and regulations for saying we are recognized you said well the treaty but the statute says a lot of things about what's a tribe and what's an Indian tribe and the regulations go further and it's funneling claimants to that status into the part 83 process so I'm just not quite getting still what you think the district court were we to remand as you request what you're asking the district court to do as a matter of evidence and conclusions specifically what we're asking this court to do is to remand and have the district court determine the issue that was reserved in footnote 10 which is are the Mackinac a recognized tribe for the purposes of the Indian reorganization act because even if let's say we win and they get reorganized and they're an IRA they're not going to be an Indian tribe for everything I understand that even for purposes of the IRA it's not entirely clear to me where you find the authority for the tribe in this situation not to seek an acknowledgement of recognition through recognition but my second point is it is the IRA itself that says that a recognized tribe as it was defined by the you know and has been subsequently clarified By the night of writers analysis that you take a look at for recognition purpose that you take a look 2  quasi anthropological definition of recognition that was used by congress when they passed the act and you take a look at whether or not they were under federal supervision in 1934 they have to meet those 2 standards we believe that they can't but they were prevented from presenting that evidence because of this idea that came out out of thin air that part 83 you have to go through part 83 So are they residing within the present boundaries of an Indian reservation? No No, that was actually removed in 88. Are they persons of one half or more Indian blood? No, the 88 amendments actually removed the requirement for being resident on an Indian tribe on an Indian reservation unless you are one half unless your group is composed of one half of Indians blood, by Indian blood and do they not need to be I'm looking at the regulation one half degree of Indian blood for whom a reservation is established and need to reside on that reservation that's 81.1 W, the older version that you argued was applied and that's exactly why some tribes don't go through the part 83 process because like for example there are no Indian reservations in Alaska although there's 250 tribes and that's because Congress said that they were Indian tribes in the Alaska Native Claims Settlement Act and the answer here is that for the purposes of the IRA and only for the purposes of the IRA are the Mackinac Indian tribe and they say they are because of the definition of Indian tribe within the statute Okay, point me to which words of the definition of the Indian tribe you're relying on I'm sorry I missed it. Definition of Indian tribe is in 25479 definition of Indian according to Carcerary which means that you take a look at the two issues of one, whether or not they were under federal supervision in 1934 which was the big holding in that case because that didn't apply to the Narragansett and the second is whether or not they are a recognized tribe within the definition of what recognition meant, what Congress meant in the definition of recognition and the subsequently for example in case of the in the case of stand up California and the city of there's a detailed explanation in there on the legislative history which was cited and was actually part of why Breyer responded the way he did because what Breyer was responding to in Carcerary was the brief of the law professors that was filed and talked about this specific issue and the idea that if you had if it was you have to read the recognition issue as the cognitive and quasi-anthropological meaning of recognition because the under federal jurisdiction in 34 would have rendered the recognition issue irrelevant and Breyer said because they got recognition wrong so often and so when Breyer was addressing the issues that were raised in the law professors brief in Carcerary by basically saying yeah you need to take a look at those two issues one were they recognized within the for the IRA purposes in this cognitive quasi-anthropological as opposed to the political recognition or that has emerged as a result of the part 83 process which is 40 years after the IRA was enacted and of course congress would have been unable to anticipate something that hadn't occurred for 40 years alright thank you thank you and I apologize again good morning your honor Nicholas Demasio on behalf of the United States and may it please the court the plaintiffs here have provided this court with absolutely no reason to depart from its holding in Janes that a group seeking to be recognized as an Indian tribe even one that previously claims to have been previously recognized in the past must exhaust its administrative remedies by filing an acknowledgement petition with Interior and the mere fact that this group is seeking a secretarial election under the Indian Reorganization Act we refer to as the analysis for three reasons the first is that the plaintiffs are simply wrong that the IRA's definitions of Indian and tribe somehow evidence the disregard for Interior's acknowledgement process to the contrary as this court explained in Wake Maloney Interior began holding acknowledgement proceedings precisely because the IRA's definitions limit IRA benefits and services only to quote Indian tribes. In the 40 years since Interior has adopted its acknowledgement regulations the plaintiffs cite no case and we are aware of none that holds that a group can simply skip that administrative process and ask a court to declare in the first instance that the group may seek IRA benefits and services because it qualifies as a recognized Indian tribe. Maybe I misunderstood Mr. I thought he identified hundreds of examples since 1978 where tribes have gained recognition but did not go through the Part 83 process perhaps I misunderstood. That's what he said but I don't think it's true the three examples that he's given and as far as I know he's only cited three examples. One is the Sioux St. Marie tribe that was actually one of the ad hoc administrative determinations that Interior reached before the Part 83 process was adopted into regulations. He's also cited the Noatak decision out of the Ninth Circuit that was a case that dealt with native Alaskan villages and it was not an IRA case, first. Second, those Alaskan native villages were in fact on the list of recognized Indian tribes that the Department of Interior maintains and they also had a government that had been adopted pursuant to Interior's regulations and that was because Alaskan native villages have a way of adopting that government even if they are not quote-unquote historically recognized tribes and that is if they have common bonds of occupation they were allowed to adopt. So is it the government's position that You said the third, oh I'm sorry. Go ahead. You were going to distinguish three examples but I interrupted. I just wanted to hear your treatment of the third example. The Tilly Hardwick cases. The Tilly Hardwick cases were a settlement that the Department of Interior reached when it had itself decided that it had unlawfully terminated certain rancherias and so it restored the status quo ante. So again, that was not a decision where  these rancherias. It was a decision, a settlement decision by the Department of the Interior. So I don't think that it's absolutely incorrect to say that they have identified any example since the 1978 regs were promulgated where a group has come directly into court seeking IRA benefits and services and the court said yes, you can simply skip the acknowledgement process and come into court. I would like to cite you to a couple of cases that I think are specifically on point here. The first would be the Sandy Lake Band of Mississippi Chippewa case, which is the most analogous to this case. It was a district court case from Minnesota. Unfortunately, it's unpublished, but it is persuasive in the sense that that group was seeking the precise thing that this group is seeking, which is a secretarial election under the IRA. And that district court specifically explained that a group cannot skip the acknowledgement process and come into court asking for a secretarial election. Was it a group that had entered into treaty with the United States? I believe that was part of their claim. I can't remember exactly what their claim of historical recognition was, whether it was a treaty or an executive order, but there was a claim. But there was some historical recognition. There was some historical recognition and based on that fact, they could come into court. So is it the government's position that since 1978, the way one gains access to IRA recognition is exclusively through the Part 83 process? Is there no other way if you are claiming to be a recognized Indian tribe in the sense that you have a government-to-government relationship with the United States? IRA recognition. Under the IRA, the exclusive mechanism for Interior to determine whether in fact you are a recognized Indian tribe, because as your Honor was questioning the appellant here, Interior simply needs a way of deciding when a group comes before Internal Services and says, I was recognized in the past. Interior needs a process for deciding whether or not that is or is not true. And that is the Part 83 process. It is the exclusive mechanism by which Interior decides. And what's the authority upon which the Secretary relies to determine that that's the exclusive process since 1978? The authority is, as this Court explained in James, Interior's general authority, which was granted by Congress, to manage Indian affairs. Under 25 U.S.C., I believe it's Sections 2 and 9, what this Court explained was that Interior had validly exercised that authority to promulgate a set of regulations governing the process by which a group may ask Interior to decide that it is a recognized Indian tribe. And that is the acknowledgement process. Can I try to ask you that? No, go ahead. You hit the button first. The Department itself acknowledges that there are, for example, if a group of half-bloods on a reservation sought to organize through a secretarial election, they could do so even though they are not listed as a federally recognized tribe. So it's not fully exclusive. And I think the statute wouldn't support a regulation that renders the part of E3 absolutely exclusive because of the definition of Indian tribe in the statute. It's a little bit broader. You have two points, I think. The first is having to do with half-bloods residing on an Indian reservation. I think what's important about that, and again, what I'm saying is that the acknowledgement process is the exclusive process for a group that claims to be a recognized Indian tribe, recognized in the sense that it has a formal government-to-government relationship with the United States. Those groups, the acknowledgement process is the exclusive way for those groups. But what you're referring to are a group of persons of half Indian blood or more residing on a single reservation, and the definition of Indian in the IRA does not say that those are recognized Indian tribes in the historical sense. That's the distinction. I know you wanted to answer my other part of my question, but I think Mr. Wallerius, that's all we're asking. We're not, it's unlike in James, we're not seeking, and unlike in Miwok, we're not seeking recognition. We're seeking What they're saying is that they were historically recognized as We're seeking organization, which has fewer benefits. What they're saying is that they are recognized for purposes of the IRA in the past, and again, we don't know this group's relationship to any historical Mackinac tribe that was mentioned in the 1855 treaty. That is an open question as to what the relation, as the appellant here explained, there are multiple different, I don't know if faction is the right term, but even within what they're calling their group, there are different groups of people who are claiming various relationships to this historical Mackinac tribe, and because they haven't gone through the process that Interior has, for it to apply its expertise to those factual questions in the first instance, we simply don't know what their relationship is to a historical Mackinac tribe. You cannot answer that question without looking at the evidence, and what this court said in James is that it is for Interior to apply its expertise to those questions in the first instance. My other case that I was going to cite to your honors was the Shawnee Indians case out of the 10th Circuit, and that was a case that dealt with a group that said that it had been historically recognized in a treaty, and the 10th Circuit said you have to exhaust your administrative remedies by going through the acknowledgment process. Now I think you're, I don't want to make arguments for your opponent, but I think you would say that there are three ways to gain this recognition. Part 83 is one of them, but Congress can do it? Now are you arguing that Congress cannot do it because of the regulations? No, clearly Congress has the power to. And that courts can do it? Well, so this is coming from an uncodified provision in the List Act, and I think that in order to understand what Congress was getting at in that uncodified finding in the List Act, you need to read all of those findings as a whole. Okay, so what's being referred to here is a statement in the third uncodified finding that tribes presently may be recognized by an act of Congress through the Part 83 process, or by a decision of the United States. What does that mean? And so the next finding explains that a tribe that has been recognized in one of those three manners cannot be terminated except by an act of Congress. So what that shows is that Congress was thinking retrospectively with these findings. It was saying that in the past there are ways in which groups may have become recognized Indian tribes for purposes of having a government-to-government relationship with the United States. But it was not suggesting that going forward, that courts should be making these types of decisions in the first instance, because these decisions are fundamentally political decisions. But Mr. Damasco, how is that different from their claim? That's what they say. They say, yeah, historically we were recognized by treaty, and so they're not really saying we want the court to recognize us. They're saying we want the court acknowledging that we are duly recognized by the federal government want organization. Well, again... And so your retrospective characterization, I mean, they might argue, would help them. I don't think that you can separate out the question of whether the group that is currently appearing before the court is a quote-unquote recognized Indian tribe from the question of whether in the what, 80 years since the 1855 treaty was enacted, what the relationship is between this particular group and that, the group that was mentioned in the treaty. That factual question is the precise thing that is being addressed by the acknowledgement process because the criteria to become acknowledged are, not only do you have to have been identified as an Indian tribe in 1900 or from the point of previous federal recognition, but you also have to have maintained that identity throughout time. But nobody's challenged that in this case, have they? Nobody's challenged whether they're the real deal. In that sense. Excuse me? In that sense of the wrong representatives. That is the fundamental question that the plaintiffs are asking the district court to decide. I mean, how else can the district court decide whether or not this group is a, quote-unquote, recognized Indian tribe without addressing the question of their relationship to the original group mentioned in the 1855 treaty? Before 1978, would a district court do that? No, so what was going on, again, and this is a point that I meant to make very early in the process, but I hadn't gotten to it yet, and that is before 1978, what was going on, and this was interior was making ad hoc recognition determinations for acknowledgement. It was making acknowledgement determinations in an ad hoc manner between 1934 and 1978. And those processes started precisely because the IRA used the term recognized and said, you only get benefits and services under the IRA if you are a, quote-unquote, recognized Indian tribe. That created the administrative dilemma that gave rise... The game is on then for what does it mean to be recognized, right? Excuse me? Then the game is, what does it mean to be recognized? And what is your relationship to anyone who was recognized in the past? And those are the precise questions that gave rise to the acknowledgement process. And my question is, were those determinations ever made by a district court before 1978? And if so, what happened in 1978 to displace the authority of the district court? Again, I think they've only brought forward to this court, and I can only address what they've cited here. They've only brought forward, as far as I know, three supposed examples. One is the Sault Ste. Marie case, the Noatak case, and the other is the Tilley-Hartwood case. And I'm telling you that I've read all of those, and our position is that none of those... Let me get back. Before 1978, were these handled in the district court on occasion? Not that I know of, no. I don't believe so. What about their position that without actually deciding the merits question, whether Part 8.3 recognition is a prerequisite to organization with the assistance of the Secretary? It doesn't make sense to require exhaustion. Okay. This is a very important point that I would like to turn to, and that is that if unlisted groups can in fact seek IRA benefits and services in court in the first instance, it would effectively represent a sea change in process into disarray. And the reason why is because you need to look at what they were ultimately asking for here, and that is a secretarial election under the IRA, and they were seeking to enforce the election procedures under 476D2. That's the only cause of action that one can identify in this case. The statute provides extremely short deadlines for the Department of the Interior to hold a secretarial election once it's been petitioned. It's 180 days, but in fact it's not even 180 days because 30 days before the election is held, Interior needs to get back to the tribe with its position. So that effectively provides the Department of the Interior five months to wade through the complicated historical and political questions that  a constitutional election as a sovereign entity. The Secretary, frankly, that would create an impossible task for the agency, and when the agency is unable to do that, it is going to create a huge burden on the courts and unprecedented burden on the courts to wade through those complicated historical and political questions in the first instance. Keep in mind here that we also are not arguing that these folks will be denied their day in court if they are ultimately found by Interior not to be a recognized Indian tribe. But how do we respond to the risk of 10 years, 20 years of processing without even having that question answered? So should we remand to the District Court and ask the District Court to answer the premise of the exhaustion requirement, which is that you actually do need to be a part of any three recognized tribe in order to get any of the IRA benefits including organization with the assistance of the Secretary? No, that's a legal question that the District Court has already answered in our favor. I don't think so. I think the District Court in footnote 10, maybe footnote 20, said no, I'm not answering that question. In the first instance, that it is for Interior's experts to apply their expertise to the facts, to the factual questions that is raised by that. And once Interior renders a decision, arbitrary and capricious review is available if that decision is adverse to the group. It's also important to keep in mind here that there are groups that have in fact gone through the process. The Grand Traverse Ban case that they are citing out of the Sixth Circuit as well as the Burt Lake group were both groups that said that they had a historical relationship to tribes mentioned in the same 1855 treaty. And those groups went through the Part 83 process. One was successful and one was not. Arbitrary and capricious review... Are those the only groups that have gone through? No. These are the two examples that I know of of groups mentioned in the same 1855 treaty as these folks that went through the Part 83 process and one was successful and one was not. And it shows why this question of the historical continuity is an important one. What's the story with the regulation? It's not clear to me why you're not adding 1.4 to this case. We thought it most fair to apply the regulations as they existed when the suit was brought, was filed in district court. And what that... The difference in the Part 81 regulations that the only potentially salient difference is the update in the cross-reference, which is really just a clerical change. Because previously what the regulations said was that if you're eligible to be included on the list provided for in Part 83... 83.6... 83.6B. So that was a cross-reference to the... This is actually proving our point because the list was in existence before the List Act was enacted and that cross-reference is a reference to the list that was being promulgated before 1994. But they jump on included or is eligible to be included and that's no longer in the current regulations. So that's not the only thing that changed. I guess that's true. The eligible to be included phrase was dropped. I can't explain exactly why that was. They think that gets them all the way to... The eligible to be included phrase? Yep. You rely on that pretty heavily so I'm surprised that you don't have a... I do have an answer. I do. I would refer your Honor to 46 Federal Register 1669 which specifically explains... It supports the interpretation of that phrase that we put forward in our brief which is that it accounts for the gap between an acknowledgement decision and the next publication of the official publication of the list. And that is specifically explained in the phrase was adopted. And that interpretation of the agency's own regulations is entirely different. Ordinarily when we say that someone has to exhaust their administrative remedies, we're telling them they need to go through a process that takes a month or at most a year. I think everyone here has acknowledged that this is a very time consuming, quite expensive process could take decades. And that you seem to be saying that's all there is. It may take 20 or 30 years for you to exhaust your administrative remedies. And I guess one question that I have is I'm very sympathetic to your argument that this is a political decision and that government to government relations should be perhaps established by the executive. On the other hand, if all they're asking for is to be able to organize, that seems to me somewhat different than saying and we get all these benefits by virtue of being acknowledged. So I guess my question is, is there any middle ground here? Or is that just it? I don't believe so for a couple of reasons. One is that it's not just a matter of adopting a constitution and organizing, but there are other benefits that are provided by the executive. For example, the Department of Interior can take land into trust for a recognized United Tribes. I understand. So what you're saying is you can't be a little bit recognized, right? I mean, it's all or nothing. No, there are a lot of things that flow from recognition as a sovereign government entity with a relationship with the United States. I appreciate the Court's concern that it is a time-consuming process. I would direct your honors to this Court's own Mashpee Wampanoag, I believe was the name. I don't know if I'm pronouncing it correctly. But it was a case that dealt with the long process for obtaining acknowledgement. And this Court acknowledged that there's a lot of work to do. It's a very factually intense exercise that requires  decision, and so it should be given the time that it needs. What about the fact that what they're seeking is mandamus? We ordinarily don't award mandamus unless there's not another avenue for the relief that's sought, and one might say that they should have sought to compel agency action under the APA, under 706-1, for example. Or arbitrary and capricious review after exhausting administrative remedies, which is how the Tenth Circuit specifically addressed Your Honor's question. I'm actually looking more at the Third Circuit approach to mandamus, where they basically said in order to be eligible to do it, and this would be different from saying you have to go through Part A3, I would say at least you have to go through APA efforts. Maybe that's just a waste of time, but I wonder about your position. It's honestly quite, I think if you look closely at the complaint and you try to figure out what their cause of action is, it's very difficult to discern. They throw around this idea of mandamus, but it hasn't appeared in any of the briefs in terms of the mandamus standard, and you're absolutely correct that mandamus is not available when there's another remedy, which the Tenth Circuit has explained there is another remedy here in this precise factual scenario where a group says that it was previously recognized historically by a treaty. So mandamus certainly would not be available for any number of good reasons. And the only cause of action, again, that they did identify is this idea that they're trying to enforce secretarial election procedures, and as we've explained in our brief, there's really no indication that Congress intended a group to be able to bootstrap a recognition claim into a cause of action to enforce election procedures that are done under a very short timeframe. So for all these reasons, unless there are any groups... Is it true? I think I remember your opponent saying that the Department of Interior never responded to the tribe's request for a call for an election. Is that right? Well, again, we have to take what's in the complaint here, but it's not true. What is true is that Interior did respond via letter to the groups explaining that it had received multiple different inquiries from different competing folks claiming to be the government of the Mackinac tribe. And so it asked the group to sort out its leadership and submit a documented petition under the acknowledgement regulations, which it would then consider, and that never happened. I'm sorry, there was never a reply to that? There was never a documented petition for acknowledgement submitted by the group claiming to be the government of the Mackinac tribe. Okay, thank you. For all these reasons, we would ask Your Honors to affirm the District Court's judgment because the plaintiffs have not yet exhausted their administrative remedies. Thank you. Mr. Wallery, you were well over your time. The Court will give you back two minutes for rebuttal, but only two minutes. Thank you, Your Honor. Was that a correct recitation that we just heard from Government Counsel? That you all had alleged that... No, the letter was made in response to an inquiry, a congressional inquiry from a congressman from the UP who had made inquiry about this, and the letter was sent, but it was sent before they made the petition that we're discussing right now. There has been no formal response from the Secretary to this petition. Thank you, because I was going to address that. The other thing is you asked the question about what did they do before? Well, as Judge Piller had noted, prior to the 88 amendments, you had to be on a reservation, so it was pretty straightforward. But the case came up with regards to the New Mexico Pueblos, because they were on Spanish land grants, Indian land grants, and what were they? And they had some very strange, they had what are called colonies. So in a series of cases, the District Court, starting with Henry Sandoval, ending with excuse me, but Sandoval, Joseph, Candelera, in a series that's actually set forth and described, the courts did do that. The question, the open process, the process is that after the determination of who these people are, that's made in the enrollment process under the regulations. So once the Secretary orders the election, there has to be an enrollment. And that, in this particular case, is very easy because you have the Durant role, which was done in 1910. And so if people are descended from that role, and the Constitution says if you're descended from that role, you're a tribal member, so it's very easy to determine for the Secretary because the Secretary has the role, and they have to come up with an enrollment that has to be approved by the Secretary and a voters list. Thank you. Thank you.
judges: Brown, Griffith, Pillard